JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Corey Campana, appeals from the trial court's granting of summary judgment in favor of defendant-appellee Ford Motor Company on his claims for breach of contract and quantum meruit or unjust enrichment. For the reasons stated below, we affirm in part, reverse in part and remand the matter for further proceedings.
 {¶ 2} Appellant assigns the following error for our review:
 {¶ 3} "The trial court incorrectly granted summary judgment to defendant/appellee Ford Motor Company as material issues of fact remain for trial."
 {¶ 4} We review an appeal of the granting of summary judgment under a de novo standard of review. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion which is adverse to the nonmoving party. Temple v. WeanUnited, Inc. (1997), 50 Ohio St.2d 317, 327.
 {¶ 5} The facts show that in 2001, engineers at the Ohio Assembly Plant (OAP) of Ford Motor Company determined that it was time to replace at least 20 of the tractor trucks used between Ford's Avon Lake and Lorain, Ohio plant locations. *Page 4 
The tractor trucks are used to haul 40-foot or longer trailers between the two plant locations. The OAP decided to replace the old trucks with new Ford trucks. The new trucks had to be custom-ordered from Ford, the original equipment manufacturer (OEM), and then shipped to a non-OEM modification center for custom modification prior to final delivery. Because Ford only sells its products through authorized Ford dealerships, OAP approached Mike Bass Ford (Bass) to arrange the deal.
 {¶ 6} Appellant is a truck sales representative for Bass and handled the details of the sale. Because of the large amount of money involved in the purchase, appellant worked out an arrangement whereby Ford Motor Credit Corporation (FMCC), a separate legal entity from Ford Motor Company, would purchase the trucks from Bass and then lease the trucks to OAP. The result was that Bass bought 20 trucks from Ford at a cost of approximately $34,000 each, arranged and paid for the modification and customization of the trucks, and then sold the trucks at a price of approximately $88,000 each to FMCC, which then leased the trucks back to Ford's OAP. Bass paid appellant a sales commission of 40% of the gross profit from the deal.
 {¶ 7} Bass ordered the trucks from Ford in April 2002. Appellant placed the orders according to OAP specifications. Bass had Ford ship the trucks to ABC Trucks (ABC) in Kansas City for custom modifications per OAP specifications. ABC shipped the trucks to Bass in September and October 2002 for final modifications and *Page 5 
delivery preparation. Bass then delivered the trucks to OAP and billed FMCC for the delivered trucks.
 {¶ 8} The record reflects that Bass paid Ford as invoiced for the 20 unmodified trucks. The record also reflects that ABC invoiced Bass in October and November 2002 for the modifications and was paid in full for these invoices. Bass' financial records show that between October and December 2002 it invoiced FMCC a total of $1,751,680 for the trucks and, in return, received payment of $1,751,680 from FMCC.
 {¶ 9} Appellant complained to Bass that Ford overcharged the dealership for the 20 truck bodies. He also claimed that Ford should be responsible for further modifications made to the trucks by ABC at OAP's request. Appellant argued that by paying more than Bass should have for the final product, the gross profit on the deal was reduced by approximately $100,000 and the reduction in profit adversely affected his sales commission by $40,000. Appellant personally tried to recoup the $100,000 he claimed the dealership was due from Ford by applying to Ford for a pricing adjustment in December 2002, and by generating an invoice for the miscellaneous modifications made by ABC in February 2003. Ford denied liability for these charges and Bass refused to pursue the matter.
 {¶ 10} In March 2003, appellant sued Bass for the additional commission he claimed he was owed on the truck deal. That case was dismissed with prejudice in December 2003 after the parties reached a settlement in which Bass assigned to appellant any "interest in any claims it has against Ford for additional compensation *Page 6 
arising out of the Sales which Ford has not paid to Mike Bass Ford Inc. * * *." Appellant brought the subject action against Ford in February 2005 alleging breach of contract and unjust enrichment. Appellee moved forand was granted summary judgment against appellant on both claims.
 {¶ 11} We will review the granting of summary judgment on each claim separately.
 I {¶ 12} Appellant claims that Ford breached its contracts with Bass by failing to fully pay amounts due on the sale of the trucks and further failing to provide Bass with credits relating to the sale of the trucks. Appellee Ford argued in its motion for summary judgment that Ford was not the purchaser of the trucks and that Bass was paid in full its asking price for the vehicles; therefore, there was no breach of the contract for the sale of the trucks. We agree there was no breach of the contract between Bass and FMCC. As to the contract between Ford and Bass relating to the purchase of the 20 OEM trucks, we find questions remain to be answered.
 {¶ 13} There were four parties involved in three separate contracts in the truck sales deal. The first contract was between Bass and Ford for the purchase of the 20 OEM trucks at a price of approximately $34,000 each. The second contract was between Bass and ABC for the modification of the trucks. The final contract was between Bass and FMCC for the sale of the modified trucks at a price of approximately $88,000 each. We note that there are no copies of any of these *Page 7 
contracts in the record, and appellant was only assigned Bass' interest to claims against Ford in the truck deal, not against ABC or FMCC.
 {¶ 14} The record before us shows that Bass paid Ford the price for the trucks per the bid appellant prepared. Appellant argues that the bid did not reflect the correct price due to a quirk in Ford's ordering process. Appellant claims that because Ford could not process the order for 30,000-pound gross weight trucks as he had submitted, Ford instructed him to change the bid to 33,000-pound gross weight trucks. Appellant claims the change in the gross vehicle weight specification was for ordering purposes only, and that Ford actually supplied Bass with 30,000-pound gross weight trucks. Appellant claims Ford breached its contract with Bass by overcharging $2,622 for each truck based on the incorrect bid specifications.
 {¶ 15} In his opposition to Ford's summary judgment motion, appellant provided evidence that he had applied for a pricing adjustment from Ford on Bass' behalf relating to the alleged overcharges. In his deposition, appellant stated that he did not know whether Bass ever received this credit. Therefore, we find that questions of fact remain as to whether Ford breached its contract with Bass by overcharging for the 20 OEM trucks and whether Bass received a credit from Ford on these charges.
 {¶ 16} Appellant's breach of contract claim further alleges that Ford should be responsible for extra modifications provided by ABC at Ford's request and then billed *Page 8 
to Bass. Appellant's claim raises the issue of whether ABC breached its contract with Bass by charging for items not covered by their agreement.
 {¶ 17} Appellant's assignment of rights from Bass is limited. It expressly grants only the right to claims Bass may have against Ford. Bass' contract for the modifications to the OEM trucks was with ABC, not Ford. As Bass did not assign appellant the rights to any claim it may have against ABC, any claim relating to the extra modifications is reserved to Bass and not appellant. Appellant has no breach of contract claim against Ford based upon Bass' contract with ABC.
 II {¶ 18} Appellant's claim for damages under the equitable doctrines of quantum meruit or unjust enrichment must fail as a matter of law. Claims made under these equitable doctrines are not based upon contract, but upon quasi-contract. Liability in quasi-contract "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." Hamilton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183. The doctrines are inapplicable if an express agreement exists between the parties. Aultman Hosp. Assn. v. CommunityMut. Ins. Co. (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920. In the absence of bad faith, fraud or illegality, the parameters of the agreement limit the parties' recovery. Id.
 {¶ 19} Although the record does not contain copies of the documents, the facts show that there was an express contract between Ford and Bass relating to the purchase of the 20 tractor trucks. Appellant's claim that Ford overcharged Bass for *Page 9 
the trucks goes to the terms of the express contract and therefore cannot state a claim in quasi-contract. The same can be said for the additional services provided by ABC for which appellant claims Ford should pay. There was an express contract between Bass and ABC for modification services. Any questions relating to those charges go to the terms of that contract and cannot be the basis of a claim for unjust enrichment.
 {¶ 20} After a careful and considerable review of the record, we find that the trial court did not err in granting summary judgment for appellee on appellant's claims based in quantum meruit or unjust enrichment.
 {¶ 21} Accordingly, we affirm the judgment in favor of Ford with respect to appellant's claim for quantum meruit or unjust enrichment. However, because we find there remain genuine issues of material fact relating to appellant's breach of contract claim against Ford regarding the pricing on the 20 OEM trucks, we reverse the judgment of the trial court granting summary judgment to Ford on that claim only and remand the matter to the trial court for further proceedings on that breach of contract claim.
Affirmed in part, reversed in part and remanded.
It is ordered that the parties bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 1