[Cite as *Bickham v. Standley*, 183 Ohio App.3d 422, 2009-Ohio-3530.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### LOGAN COUNTY


BICKHAM,

    APPELLEE,                                        CASE NO. 8-09-01

    v.

STANDLEY,                                        O P I N I O N

    APPELLANT.


Appeal from Bellefontaine Municipal Court
Trial Court No. 08 CVF 159

Judgment Affirmed in Part and Reversed in Part

Date of Decision:  July 20, 2009


**APPEARANCES:**

    John D. Bodin, for appellee.

    Jeffrey S. Standley, for appellant.


    WILLAMOWSKI, Judge.

    **{¶1}**  The defendant-appellant, Nigle Standley, appeals the judgment of the Bellefontaine Municipal Court granting summary judgment in favor of the

plaintiff-appellee, Sharon Bickham, as executor of the estate of Leyette Neal. On appeal, Standley contends that the trial court erred by granting summary judgment, that the trial court erred by finding that defendant was not authorized to act as he did, and that the trial court erred by failing to apply the indemnification/hold-harmless clause of the contract. For the reasons set forth herein, the judgment of the trial court is affirmed in part and reversed in part.

{¶2} This dispute arises from two contracts: the first contract was an auction-sale agreement executed between Neal[1] and Standley for the auction of Neal's personal and real property, and the second contract was a real estate purchase agreement in which James Snyder agreed to purchase Neal's real property. Snyder later refused to perform under the purchase agreement, Bickham sold the real property to another buyer, and Standley returned to Snyder his $5,000 earnest money. None of these essential facts are in dispute.

{¶3} On February 7, 2008, Bickham filed a complaint against Standley and Snyder. Bickham sought damages against Standley for breach of the purchase

---

[1] Bickham signed the contract as Neal's power of attorney; however, there is some evidence that Neal was participating in the decision-making process.

agreement and for breach of fiduciary duty, and she sought damages against Snyder for breach of contract.[2] On March 7, 2008, Standley filed his answer and a counterclaim, in which he sought damages for breach of the auction-sale agreement and unjust enrichment and sought enforcement of the indemnification/hold-harmless clause in the purchase agreement. Following the denial of a motion to dismiss Standley's counterclaims, Bickham filed her answer on April 25, 2008.

{¶4} On June 9, 2008, Standley and Bickham entered a joint stipulation in which Standley agreed to withdraw his claims for breach of contract and unjust enrichment as they related to his sales commission under the auction agreement. However, Standley reserved "his right to assert the claim of unjust enrichment as it relates to his efforts undertaken in his capacity as the auctioneer relative to the auction which occurred on September 8, 2007."

{¶5} On July 25, 2008, Standley filed a motion for summary judgment on Bickham's claims. On July 25, 2008, Bickham filed a motion for summary judgment on her complaint and on Standley's counterclaims. On August 11, 2008, both parties filed their responses to the summary-judgment motions. Standley filed the transcript of Bickham's deposition on August 29, 2008. The trial court heard oral arguments on the summary-judgment motions, and on December 8,

---

[2] Snyder was dismissed with prejudice by the plaintiff on June 25, 2008, and the trial court filed a judgment entry dismissing Snyder with prejudice on June 27, 2008.

2008, the court denied Standley's motion for summary judgment and granted Bickham's motion for summary judgment. Standley appeals the judgment of the trial court, raising three assignments of error for our review.

*Assignment of Error No. 1*

The trial court's granting of summary judgment to Plaintiff Bickham was improper.

*Assignment of Error No. 2*

Contrary to the lower court['s] holding Mr. Standley was authorized to return the earnest money.

*Assignment of Error No. 3*

The lower court failed to apply the save harmless clause in the auction contract to offset any award for the plaintiff.

{¶6} For ease of analysis, we elect to address the assignments of error together and to answer the question whether the trial court erred in granting summary judgment to Bickham. Although Standley has set forth three separate assignments of error, the second and third assignments of error are essentially separate arguments supporting his first assignment of error—that the trial court erred in granting summary judgment.

{¶7} An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559,

833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ.R. 56(C) are met." *Adkins v. Chief Supermarket,* 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences." Id. at ¶ 8, citing *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the nonmovant. *Jacobs* at 7.

{¶8} The party moving for summary judgment must identify the basis of the motion to allow the nonmovant a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)." Id. at 115, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;

*Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the nonmoving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial." *Dresher* at 294.

{¶9} In the third assignment of error, Standley contends that the trial court erred when it failed to apply the indemnification clause because the plain language of the auction contract indicates Bickham's agreement to indemnify and hold harmless. Bickham contends that R.C. 4735.621 renders the indemnification clause unenforceable.

{¶10} R.C. 4735.62 sets forth fiduciary duties. R.C. 4735.621 provides for the waiver of fiduciary duties. In particular, R.C. 4735.621(A) states, "The duties required of a licensee under section 4735.62 of the Revised Code may not be waived by a client." The auction contract states:

> 1. I (We) hereby grant unto *Nigle L. Standley* the exclusive right and authority to sell the following (real) and/or (personal) property described in the schedule attached hereto and made a part hereof at PUBLIC AUCTION on the *Sept.* day of *8ᵗʰ*, 20*07* for the highest and best bid.
>
>      * * *
>
> 8. I (We) agree not to sell or remove any of such property from premises after date of this contract. I (We) further agree to indemnify and save harmless *Nigle L. Standley* Auctioneer, his or its employees, against any and all claims, demands, action or causes of

> action whatsoever in any manner arising by the executor of this contract.

The evidence was undisputed that Snyder arrived and made his offer on the property after the close of the auction on September 8, 2007. The purchase agreement does not contain a similar statement. The binding effect of the auction contract lapsed at the end of the auction and was no longer in effect at the time the purchase agreement was entered into. Furthermore, even if the contract was still binding, such a waiver is unenforceable under R.C. 4735.621(A). Accordingly, summary judgment was not inappropriate in regard to the indemnification/hold-harmless clause. The third assignment of error is overruled.

{¶11} The first and second assignments of error essentially allege that the trial court erred by granting summary judgment to the plaintiff. In her motion for summary judgment, Bickham argued that the purchase agreement, by its plain language did not contain a financing contingency. Bickham claimed that under paragraph 17 of the purchase agreement, Standley was not entitled to return the earnest money to Snyder without her authorization, which she did not provide. Bickham alleged that Standley's actions constituted a breach of contract and a breach of his fiduciary duties under R.C. 4735.62. As to the unjust-enrichment claim Standley asserted seeking damages for his time and effort leading up to the auction held on September 8, 2007, Bickham argued that unjust-enrichment is not

a viable claim when the same subject matter is covered by an express contract, such as the auction agreement.

{¶12} In his responsive memorandum, Standley argued that Bickham's breach-of-contract claim must fail because Bickham sold the property to the second buyer without his knowledge, thereby rendering it impossible for him to perform his fiduciary duties. Standley claimed that "[n]o one knows why the initial real estate purchase contract did not close" but Snyder may have performed had he been given the full 30 days to pay the purchase price before closing. Standley contends that Bickham knew Snyder was having difficulty obtaining financing, and she never requested retention of the earnest money. Standley alleges that the financing contingency in the purchase agreement was not crossed out, and therefore, Bickham was not entitled to sell the property to the second buyer at the time she did. As to his counterclaims, Standley contends that any fiduciary duty he owed Bickham was waived once Bickham sold the property to the second buyer, and Bickham's "unclean hands in unilaterally selling the property clearly tip the equitable scales in Mr. Standley's favor and would, therefore, result in Plaintiff being unjustly enriched."

{¶13} In his counterclaim, Standley sought damages for "unjust enrichment as it relates to his efforts undertaken in his capacity as the auctioneer relative to the auction which occurred on September 8, 2007." The auction agreement, signed on May 7, 2007, stated:

2. I (We) hereby grant unto *Nigle L. Standley* the exclusive right and authority to sell the following (real) and/or (personal) property described in the schedule attached hereto and made a part hereof at PUBLIC AUCTION on the *Sept.* day of $\underline{8^{th}}$, 20$\underline{07}$ for the highest and best bid.

\* \* \*

4. I (We) agree to pay *Nigle L. Standley* Auctioneer a commission of *6* percent of the gross proceeds of such sale of *Real Estate*, and *22* percent of the gross proceeds of such sale of *Household*, with a minimum commission of $ *Ø*.

\* \* \*

7. I (We) agree that auctioneers commission and all expenses incurred for advertisement, promotion and of conducting said Auction as above agreed, shall be first paid from the proceeds realized from said auction before the payment and satisfaction of any of the above described liens or encumbrances. I (We) further agree that any checks made payable to said Auctioneer are taken subject to collection.

The underlined portions of the contract were completed in handwriting. The undisputed facts pertinent to Standley's unjust-enrichment claim were that he was under contract to sell Neal's real property at public auction on September 8, 2007; that he received no bids on Neal's real property; that after the auction closed on September 8, 2007, Snyder offered to purchase the property, and a purchase agreement was signed; that Snyder refused to purchase the property because of financing difficulties; that the parties discussed the possibility of an absolute auction on September 13, 2007; and that Bickham sold the real property to a different buyer on September 15, 2007.

{¶14} Standley claims Bickham was unjustly enriched by the effort and work he put into preparing the property for auction and for conducting the auction on September 8, 2007. Unjust enrichment is an equitable doctrine, not based on contract law but upon quasi-contract. *Homan, Inc. v. A1 AG Serv., L.L.C.*, 175 Ohio App.3d 51, 2008-Ohio-277, 885 N.E.2d 253, at ¶ 21, citing *Campana v. Ford Motor Co.*, 8th Dist. No. 88616, 2007-Ohio-4040, at ¶ 18. "'Liability in quasi-contract "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain."'" Id., quoting *Campana* at ¶ 18, quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298. However, the doctrine of unjust enrichment cannot apply when an express contract exists. Id., citing *Campana* at ¶ 18, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920. See also *Davidson v. Davidson,* 3d Dist. No. 17-05-12, 2005-Ohio-6414, at ¶ 19, citing *Ullmann v. May* (1947), 147 Ohio St. 468, 479, 72 N.E.2d 63. The auction agreement, quoted above, set forth the conditions and terms of payment. Accordingly, Bickham was entitled to summary judgment on Standley's counterclaim for unjust enrichment.

{¶15} In her complaint, Bickham alleged that Standley breached the purchase agreement by returning to Snyder the $5,000 earnest money. Again, the material facts are not in dispute. Standley was under contract to conduct a public auction of the real property, which he did, and no bids were received. After the

auction closed, Snyder presented an offer on the property, which Bickham accepted, as evidenced by the purchase agreement. On September 13, 2007, Standley and Bickham discussed Snyder's refusal to perform, based on difficulty obtaining financing, and they discussed an absolute auction. On September 15, 2007, Bickham sold the property to a different buyer.

{¶16} The purchase agreement contains the following pertinent language, with the underlined sections having been completed by hand:

> 3. PRICE. Purchaser agrees to pay for the Property the sum of *Forty Seven thousand Five hundred* dollars ($ *47,500.00*), payable in cash at closing; contingent upon the Purchaser's ability to obtain _____ financing in the amount of $_____ _____% at prevailing rates and terms. Seller shall have the right to cancel this Contract if Purchaser fails to apply for such financing within _____ (7) days after acceptance of this offer.
>
> * * *
>
> 17. EARNEST MONEY. Purchaser has deposited with Broker the sum receipted for on page one of this Contract, which shall be returned to Purchaser upon Purchaser's request, if no contract has been entered into. Upon acceptance of this contract by both parties, Broker shall deposit such amount in its trust account to be disbursed, subject to collection by Broker's depository, as follows: (a) deposit shall be applied on purchase price or returned to Purchaser when transaction is closed; (b) if Seller fails or refuses to perform, or any contingency is not satisfied or waived, the deposit shall be returned; (c) if Purchaser fails or refuses to perform, this deposit shall be paid to Seller. If the parties are unable to agree upon the disposition of the deposit, then upon the request of either Purchaser or Seller for the return or payment of the deposit, the Broker holding the deposit shall give written notice to the other party of such request, and shall advise the other party that such deposit shall be returned or paid in accordance with such request unless the other party delivers written objection thereto within 20 days after

receipt of such notice. If the Broker does not receive any written objection within such 20-day period, or in the event of a dispute over the disposition of the deposit, Broker shall retain the deposit until (i) Purchaser and Seller have settled the dispute; (ii) disposition has been ordered by a final court order; or (iii) Broker deposits said amount with a court pursuant to applicable court procedures. The return or payment of such deposit shall not in any way prejudice the rights of Seller, Purchaser or Broker(s) in any action for damages or specific performance.

Paragraphs four through seven were crossed out with a hand-drawn line, and the word "Auction" had been written by hand through the line. The first issue presented by Bickham's breach-of-contract claim is whether Bickham was entitled to the $5,000 earnest money. Therefore, if a financing contingency existed and failed, Snyder was entitled to return of the money, but if there was no financing contingency, and if Snyder simply refused to perform despite the contingency, Bickham was entitled to the money.

{¶17} Neither party has cited any authority concerning the meaning of spaces left blank in a form contract. In *Young v. Louisville Title Agency for N.W. Ohio, Inc.* (Jan. 15, 1993), 6th Dist. No. 91WD097, the parties completed a purchase agreement that contained a financing contingency clause; however, the top of the form provided a space where the parties could fill in the dollar amount of "cash by obtaining _____ mortgage." The blank space was left empty. Id. at * 3. The trial court determined that the purchase agreement was not contingent upon the appellant's obtaining financing. Id. On appeal, the appellant argued that the blank part of the form indicated that the contract was contingent on financing,

or in the alternative, that the blank space created an ambiguity in the contract, which would have prevented summary judgment. Id. at * 4. The appellant produced evidence showing that financing was a contingency in the agreement. Id. The court agreed, finding that the financing paragraph, when read in pari materia with the blank line at the top of the form, created an ambiguity on the face of the contract. Id. The court held that the trial court could consider extrinsic evidence to ascertain the parties' intent. Id., citing *West v. Ankney* (1956), 73 Ohio Law Abs. 56, 58-59, 60 O.O. 449, 134 N.E.2d 185.

{¶18} In this case, the only financing contingency clause was contained in paragraph two, as quoted above. Unlike the contract in *Young*, this contract is clear and unambiguous. The purchase price was payable in cash subject to Snyder's ability to obtain financing. The parties did not write an adjective describing the type of financing in the space provided, nor did they write in any specific terms establishing an amount Snyder would seek in financing. By leaving the blank space, the contract language was clear that if Snyder obtained *any* financing, he was required to perform. Although Standley claimed in his motion that nobody knew why Snyder did not perform, Standley had previously submitted a copy of Snyder's letter, which stated:

> Per our telephone conversation Wednesday, September 12, 2007 I am unable to proceed with the purchase of the [real estate] *due to unfavorable financing*. Therefore, please consider the Real Estate Purchase Contract dated September 8, 2007 to be null & void,

> please return my check #2540 in the amount of $5,000.00 that was used as earnest money.

(Emphasis added.) Despite Snyder's letter referencing unfavorable financing, in his affidavit, Standley stated, "On September 12, 2007, Jim Snyder informed me by telephone and later by letter that he was not having success in obtaining financing for purchase of the property. On September 13, 2007, I informed Plaintiff Sharon Bickham that Jim Snyder may not be proceeding with the purchase due to financing problems he was experiencing." In her deposition, Bickham stated, "[Standley and I] sat on the front porch and discussed the sale. He had the literature from the sale, and then he said that Mr. Snyder cannot get financing for the property. And I said, 'What about the $5,000?' He said, 'He wants that returned.'" Bickham also discussed her assumption that Snyder had obtained financing prior to making his offer on the real property.

{¶19} Although the language of the contract is clear, the evidence in this case is not. If Snyder had been unable to obtain *any* financing for the property, then the financing contingency would have failed, triggering paragraph 17(b) of the purchase agreement, which allowed for the return of the earnest money. However, Snyder's letter implies that he was able to obtain some form of financing; however, he found the terms to be unsatisfactory. If Snyder did obtain financing that he found to be unfavorable, his refusal to perform would have constituted an anticipatory repudiation, which would have entitled Bickham to

cancel the contract and find a new buyer to mitigate damages. *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, at ¶ 44 and 47, citing Farnsworth, Contracts (1982) 627-628, Section 8.20; *Farmers Comm. Co. v. Burks* (1998), 130 Ohio App.3d 158, 172, 719 N.E.2d 980. In the latter situation, paragraph 17(c) of the purchase agreement would have been triggered, and Bickham would have been entitled to retain the earnest money. Because there remains a genuine issue of material fact, the trial court erred in granting summary judgment in favor of the plaintiff on her claims for breach of contract and breach of fiduciary duty. The first and second assignments of error are sustained consistent with this opinion.

{¶20} The judgment of the Bellefontaine Municipal Court is affirmed in part and reversed in part.

Judgment affirmed in part
and reversed in part.

PRESTON, P.J., and ROGERS, J., concur.