**CECIL & GEISER, L.L.P., f.k.a. Plymale Partnership, L.L.P., Appellee,**

**v.**

**PLYMALE et al., Appellants. (Two cases.)**

[Cite as *Cecil & Geiser, L.L.P. v. Plymale*, 196 Ohio App.3d 322, 2011-Ohio-5468.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 11AP–167 and 11AP–182.

Decided Oct. 25, 2011.

324

Cooper & Elliott, L.L.C., Rex H. Elliott, and Charles H. Cooper Jr.; and Cecil & Geiser, L.L.P., and Andrew W. Cecil, for Cecil & Geiser, L.L.P., formerly Plymale Partnership, L.L.P.

John M. Alton Co., L.P.A., and John M. Alton, for Ronald E. Plymale and Plymale & Dingus, L.L.C.

---

TYACK, Judge.

{¶ 1} Plaintiff, Cecil & Geiser, L.L.P., appeals the decision of the Franklin County Court of Common Pleas. Defendants, Ronald E. Plymale and the law firm Plymale & Dingus, L.L.C., also appeal the decision of the trial court. For the following reasons, we remand this case to the trial court for further proceedings.

{¶ 2} Cecil & Geiser, L.L.P., formerly Plymale Partnership, L.L.P. ("Cecil & Geiser"), assign the following errors:

I. The Trial Court bifurcated Count Four of the Amended Complaint for hearing but then erred when it dismissed the remaining counts after the December hearing regarding *only* Count Four without having allowed Plaintiff to present evidence in support of the remaining Counts of the Amended Complaint, including counts against Defendant Plymale & Dingus.

II.  The damages the Trial Court determined Plaintiff sustained were inadequate in light of the uncontroverted testimony presented by Plaintiff.

III.  Equity demands that the parties be returned to their original position as if no transaction had occurred between the parties.  The [Trial] Court failed to calculate *all* monies paid by Plaintiff either directly to Defendant Plymale or paid in reliance of the agreement between Plaintiff and Defendant Plymale.

{¶ 3} Defendants Ronald Plymale and his current law firm Plymale & Dingus, L.L.C. (collectively, "defendants"), assign the following errors in their cross-appeal:

I.  The trial court erred in concluding that Ronald Plymale breached the Licensing Agreement of September 1, 2001 and as a result thereof, awarding summary judgment in favor of Plaintiffs–Appellees.

II.  The trial court erred in considering parol evidence to modify the plain and unambiguous terms of the license agreement.

III.  Assuming arguendo that plaintiff-appellees did in fact lose the right to continue use of the name "The Plymale Partnership" upon Defendant–Appellant's return to practice in Columbus, Ohio, then the trial court erred in its *sua sponte* dismissal of defendant's counterclaim.

## Facts and Procedure of the Case

{¶ 4} This dispute concerns the "Plymale" trade name.  Andrew Cecil, Michael Geiser, Ron Plymale, and another attorney, who subsequently left the firm, formed a limited-liability partnership named Plymale & Associates.  The name was changed to The Plymale Partnership in 2002 with partners Plymale, Cecil, and Geiser.  In 2001, Plymale and his two partners began discussing his potential retirement from the firm and amended the partnership agreement with a license agreement.

{¶ 5} The license agreement provided that upon Plymale's death or withdrawal from the firm, he would be paid a royalty of four percent of gross revenues, payable quarterly for four years.  In return, the partners could continue to use certain partnership assets, namely the firm's name, website, e-mail address, and phone numbers that were owned or leased by Plymale.

{¶ 6} Plymale withdrew from the law firm and the practice of law in June 2003. He moved to Florida and engaged in real-estate development.  Plymale was fully paid under the terms of the license agreement a total of $473,665.86.  Cecil & Geiser continued to use the firm name "The Plymale Partnership" in their marketing efforts, since the Plymale name, as well as the phone numbers and website previously associated with the firm, was already firmly established in the central Ohio market.  Between June 2003 and the first half of 2009, Cecil &

Geiser spent more than $5 million in marketing the firm under the name "The Plymale Partnership."

{¶ 7} This controversy began in 2008 when Plymale suggested that he might return to Columbus and run for judicial office. Cecil & Geiser informed Plymale that his return to practice in Columbus would violate the license agreement and would require Cecil & Geiser to cease using the Plymale name.

{¶ 8} In March 2009, Plymale returned to practice law in central Ohio and formed Plymale & Dingus, L.L.C., with attorney Shawn Dingus. Plymale, on June 8, 2009, demanded that Cecil & Geiser stop use of the Plymale name. Cecil & Geiser changed their firm name to Cecil & Geiser, L.L.P. Apart from an initial period during which Cecil & Geiser also identified themselves as being formerly known as The Plymale Partnership, Cecil & Geiser ceased use of the name Plymale.

{¶ 9} Cecil & Geiser filed suit on May 5, 2009, in the Franklin County Court of Common Pleas, claiming that Plymale had breached the license agreement, been unjustly enriched, and committed a fraud against Cecil & Geiser, and that Plymale & Dingus, L.L.C. tortiously interfered with a contract. Defendants filed a counterclaim, and Cecil & Geiser later filed a motion for partial summary judgment on count two, a breach-of-contract claim, alleging that Plymale breached the license agreement. The trial court entered a decision granting Cecil & Geiser's motion for partial summary judgment on July 22, 2010.

{¶ 10} The trial court's July 22, 2010 decision included the following findings of fact: the contemplation of both parties at the time of license agreement was that Plymale would retire from active trial practice in Ohio; in 2004, Plymale executed an affidavit in his divorce case stating that he had "retired" from the practice of law and "sold his law practice"; the parties' intended arrangement was in the nature of a buyout of the active law practice and good will developed by Plymale; after four years of royalty payments, Cecil & Geiser would own the right to continue to use the name Plymale and the trade name "Plymale & Associates"; Plymale's $200,000 law-firm capital account had been returned premised upon his "retirement"; Plymale retired from the active practice of law in Ohio; the license agreement is sensible only if Plymale retires; and there is no genuine dispute of fact that Plymale's return to the practice of law in Ohio deprived plaintiffs of the benefit of much of its bargain in the license agreement.

{¶ 11} The trial court's July 22, 2010 decision contained the following conclusions of law: partial summary judgment is granted on count four of the amended complaint based on plaintiff's being denied the benefit of the bargain; the no-competition clause is not overly broad; the license agreement must be subject to the Ohio Supreme Court Rules of Professional Conduct; under the Rules of Professional Conduct, Plymale was entitled to return to the practice of law in

Ohio; Plymale is equitably obligated to repay some of the consideration received; this case is best analyzed as one demanding equitable remedy; and the equitable claim for promissory estoppel pleaded in count four of Cecil & Geiser's amended complaint should be the focus of the case.

{¶ 12} The trial court stated that whether technically called a case for money had and received, or for quantum meruit, or for unjust enrichment, plaintiff is entitled to receive some equitable remedy for what occurred. The trial court also correctly stated that on equitable claims, such as money had and received, quantum meruit, or unjust enrichment, no jury trial is available. *Turturice v. AEP Energy Servs., Inc.,* 10th Dist. No. 06AP–1214, 2008-Ohio-1835, 2008 WL 1759078.

{¶ 13} The trial court also stated: "Pursuant to Civ. R. 42, the court bifurcates the trial of Count Four in the First Amended Complaint (Promissory Estoppel) from further proceedings on Counts One–Three."

{¶ 14} What is absent from the trial court's summary-judgment ruling on a breach-of-contract claim is whether the license agreement is a valid contract. This is a question of fact for which Cecil & Geiser does have a right to a jury trial.

{¶ 15} A bench trial was held December 20, 2010, and the trial court issued its decision on January 5, 2011. The trial court made the following findings of fact: Plymale retired from active law practice with The Plymale Partnership on June 30, 2003; Plymale was paid $473,665.86 as a licensing fee for the permanent right to use his name; the trade name "Plymale" and variations like "The Plymale Partnership" are covered by the licensing agreement; advertising for Cecil & Geiser focused on the Plymale name until mid 2009; the marketing goal of plaintiff was to brand the law firm; no evidence before the court directly correlated the gross amount spent to advertise with resulting revenue, or with the number of good clients or profitable cases generated by such advertising; the time duration for public awareness of a law firm that advertises that it is primarily for personal-injury clients is unknown; there is no data proving things like whether an ad run last year or last week will still produce a client this week; it is unclear whether Cecil & Geiser's firm name change or Plymale's re-entry into the marketplace materially contributed to Cecil & Geiser's decline in new-client-call volume; Plymale did not reclaim great visibility or find more than modest financial success in returning to law practice in central Ohio; the marketing efforts of Cecil & Geiser to promote Plymale's name while he was retired was, to some degree, unproductive in branding his name; and evidence suggests that the value of a plaintiff's trial lawyer's name may simply not be sustainable over a long period.

{¶ 16} The trial court, in its January 5, 2011 decision, made the following conclusions of law: under applicable Ohio Supreme Court rules for the bar, Plymale was absolutely entitled to resume practice even though the resumption had the collateral consequence of requiring his former law firm to stop using the Plymale name; Plymale's return to practice unjustly enriched him; and there was proven injury to Cecil & Geiser. The trial court awarded damages under the theory of unjust enrichment or quasi-contract.

{¶ 17} The trial court also found that this case was closely aligned with intellectual-property cases, particularly those addressing trademark infringements. The trial court calculated what the hypothetical reasonable royalty would be for use of the trade name for only six years instead of permanently and found that the record permitted a reasonable finding of this amount despite the difficulty. The court concluded that a reasonable royalty would be 20 percent less than the royalty actually paid, awarding damages of $98,672.

{¶ 18} The trial court also found that over and above these unjust-enrichment damages, Cecil & Geiser is due the cost of changing the firm's name. The court awarded $102,977.06 against Plymale. The trial court does not specify what theory of law it used to award these damages, but it seems likely to be promissory estoppel.

{¶ 19} Prejudgment interest was awarded at the legal rate on the total of $201,649.06 from and after June 8, 2009. Court costs (but not attorney fees) were also taxed against Plymale as well.

{¶ 20} Finally, the trial court stated that "[a]ll remaining claims of all parties have been addressed on the record at trial, or are captured by the court's findings and conclusions in this decision." This paragraph effectively dismissed with prejudice all remaining claims by both parties.

{¶ 21} It is against the backdrop of these facts as well as the decisions of the trial court that both parties assert assignments of error. We will first examine Cecil & Geiser's assignments of error.

### Plaintiff Cecil & Geiser's Assignments of Error

{¶ 22} Cecil & Geiser's first assignment of error asserts that the trial court separated count four of the amended complaint for trial but then erred when it dismissed the remaining counts of a breach-of-contract claim and tortious-interference-with-a-contract claim sua sponte without notice or a reasonable opportunity to respond.

{¶ 23} The trial court does not specify the reason for the dismissal. We construe it as a dismissal for failure to prosecute under Civ.R. 41(B)(1). In order for a court to dismiss a claim sua sponte, the court must give notice that dismissal

of the claim is possible. This notice requirement applies to all dismissals with prejudice. *Ohio Furniture Co. v. Mindala* (1986), 22 Ohio St.3d 99, 101, 22 OBR 133, 488 N.E.2d 881. This requirement stems from and reflects a basic tenet of Ohio jurisprudence that cases should be decided on their merits. *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 454 N.E.2d 951.

{¶ 24} Further, when a party has been informed that dismissal is a possibility, it must be given a reasonable opportunity to defend against dismissal. *Quonset Hut, Inc. v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 49, 684 N.E.2d 319. What constitutes notice and an opportunity to respond must be examined on a case-by-case basis. Notice needs to be formal but can be implied. *Sazima v. Chalko* (1999), 86 Ohio St.3d 151, 155–156, 712 N.E.2d 729. This court has previously addressed sua sponte dismissal by trial courts, finding that notice and reasonable opportunity to respond are required. *Mayrides v. Franklin Cty. Prosecutor's Office* (1991), 71 Ohio App.3d 381, 594 N.E.2d 48.

{¶ 25} Our review of a Civ.R. 41(B)(1) dismissal with prejudice is limited to whether the trial court abused its discretion. *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 371, 678 N.E.2d 530. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. The trial court dismissed the remaining claims in the case under Civ.R. 41(B)(3), which is within the trial court's discretion.

{¶ 26} The trial court, in its July 22, 2010 decision, granted a motion for partial summary judgment on count four of Cecil & Geiser's amended complaint, which was a claim for promissory estoppel. Count two, breach of contract, and count three, tortious interference with a contractual relationship, were dismissed in the trial court's January 5, 2011 decision. Count one, a claim of fraud, was dismissed voluntarily by Cecil & Geiser at trial.

{¶ 27} Both counts two and three require that the license agreement be found to be an enforceable contract. The trial court made clear that the license agreement is not a normal commercial contract and that it must comply with the Ohio Rules of Professional Conduct. The trial court did not specifically make a ruling on whether the Rules of Professional Conduct rendered the license agreement unenforceable. Rather, the trial court stated the difficulty in instructing a jury on the computation of damages for breach of the license agreement against the backdrop of the Rules of Professional Conduct.

{¶ 28} The trial court then ruled that the case should focus on an equitable claim by Cecil & Geiser against defendants. The trial court continued in its

decision with different types of equity claims: money had and received, quantum meruit, and unjust enrichment. The trial court's last sentence of its summary-judgment section gives guidance as to which direction the trial court wanted the case to head: "Neither side should get a windfall; recovery limited by equitable principals will avoid that." Then the trial court separated the equity claim, count four, from the other claims so as to focus the trial on equity.

{¶ 29} Towards the conclusion of the trial, Cecil & Geiser's counsel addressed the question about the remaining claims of breach of contract and tortious interference. Counsel makes clear that there is evidence they would present, separate and apart from evidence presented on equity claims, if they were given an opportunity to do so. The trial court, after closing arguments, stated that it believed the breach-of-contract and the tortious-interference claim were subsumed within the unjust-enrichment claim. Cecil & Geiser did not agree that those issues were subsumed and stated what type of evidence would be presented on those claims if they were allowed to do so.

{¶ 30} Examining the case law, we find that there was insufficient opportunity to present evidence, especially considering the lack of clarity in, and the timing of, the notice that dismissal was a possibility. Defendants did not move for dismissal. The trial court, while wanting to focus on equity, did not give notice that dismissal was possible before trial. The trial court had bifurcated the claims, specifically separating the equity claim from the other claims, which would indicate that the other claims still remained to be adjudicated rather than being subsumed in the equity claim. Both parties proceeded to the bench trial on equity claims assuming that the remaining claims would be adjudicated later at a jury trial.

{¶ 31} The trial court gave notice of possible dismissal the night before closing arguments. This issue of dismissal was addressed on the record only after closing arguments, in which Cecil & Geiser denied that the claims were subsumed and argued that there was separate evidence to be presented. Cecil & Geiser was not given a reasonable opportunity to defend against dismissal of the claims of breach of contract or tortious interference, nor was all the evidence presented to the trial court.

{¶ 32} Defendants argue that Cecil & Geiser was not prejudiced by the trial court's dismissal because they presented their evidence on count two and three at trial. Cecil & Geiser did not present evidence on counts two and three, and there was no opportunity to do so. Cecil & Geiser's counsel simply wanted to protect the record as to these two claims and only briefly expounded on what evidence would be presented if the claims were litigated. This exchange with the trial court, after closing arguments, does not change that Cecil & Geiser was prejudiced by the dismissal of its breach-of-contract and tortious-interference claims.

{¶ 33} Cecil & Geiser was prejudiced by the dismissal of its breach-of-contract claim and tortious-interference claim. It was not given a reasonable opportunity to defend against dismissal after notice was given the night before closing arguments.

{¶ 34} Cecil & Geiser's first assignment of error is sustained.

{¶ 35} Cecil & Geiser's second and third assignments of error argue that the damages awarded by the trial court were against the manifest weight of the evidence.

{¶ 36} "Judgments supported by some competent, credible evidence going to all the elements of the case will not by reversed by a reviewing court as being against the manifest weight of evidence." *C.E. Morris Co. v. Foley Const. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Further, "a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Griffin v. Twin Valley Psych. Sys.*, 10th Dist. No. 02AP–744, 2003-Ohio-7024, 2003 WL 22999355.

{¶ 37} Cecil & Geiser argues that the trial court's damage award did not go to all essential elements of the case. By not allowing evidence to be presented at the bench trial related exclusively to the nonequity claims of breach of contract and tortious interference of contract, the trial court did not have all the necessary evidence in reaching its damage award.

{¶ 38} Cecil & Geiser also argues that the trial court did not consider all the money paid by Cecil & Geiser directly to Plymale or paid in reliance on the license agreement.

{¶ 39} Cecil & Geiser argues that the trial court did not consider the value that Plymale received from the millions of dollars spent on marketing a firm with his name during the period when he was retired, or the detriment Cecil & Geiser endured in marketing the Plymale name in reliance on Plymale's promise. The trial court did consider these factors, as shown by its January 5, 2011 findings that Plymale did not reclaim great visibility or find more than modest financial success in returning to law practice in central Ohio; the marketing efforts of Cecil & Geiser to promote the Plymale name while he was retired were, to some degree, unproductive in branding his name; evidence suggests that the value of a plaintiff's trial lawyer's name may simply not be sustainable over a long period; and no evidence before the court directly correlates the gross amount spent to advertise with resulting revenue, or with the number of good clients or profitable cases generated by the advertising. These findings are reasonable and support

the trial court's judgment that there be no damages awarded based on the marketing efforts of Cecil & Geiser.

{¶ 40} Cecil & Geiser also argues that the trial court's decision not to award damages based on lost market shares and revenue suffered in reliance on Plymale's promise is against the manifest weight of the evidence. The trial court did consider these issues and made the following finding: "It is unclear whether the change of firm names, or Plymale's reentry into the marketplace materially contributed to any such decline." This is not an unreasonable conclusion and supports the trial court's judgment not to award damages based on Cecil & Geiser's lost market share or revenue.

{¶ 41} Finally, Cecil & Geiser argues that the trial court's determination of a "reasonable royalty" for six years' use of the Plymale name is against the manifest weight of the evidence in that Cecil & Geiser would have paid nothing for the Plymale name if it had not been permanent. The trial court found that Plymale was unjustly enriched by the royalty payments; however, it also found that Cecil & Geiser had the benefit of using the Plymale name for six years so Cecil & Geiser is not entitled to a return of all royalty payments. The question of what percentage of royalty payment should be returned to them remained.

{¶ 42} The trial court determined that based on all the evidence, 20 percent of the royalty payments would be awarded as the difference between permanent use of the Plymale name and six-year use. The trial court made the following findings of evidence to support this amount: evidence suggests that the value of a plaintiff's trial lawyer's name may simply not be sustainable over a long period; the time duration for public awareness of a law firm that advertises primarily for personal-injury clients is unknown (i.e., there is no data proving things like whether an ad run last year or last week will still produce a client this week); a trade name on an older lawyer would decline in value as he aged; and Cecil & Geiser would have contemplated some changes in advertising over time, making themselves more of the focal point of their marketing, which they did. The trial court's determination of a 20 percent reduction in the royalty payments is reasonable based on the evidence.

{¶ 43} The trial court's determination not to award damages for marketing spent by Cecil & Geiser and the lost market share, as well as its determination of a reasonable royalty, is reasonable and not against the manifest weight of the evidence if it is determined at trial that the license agreement is not a valid contract and damages must be awarded under an equity theory of unjust enrichment. If the license agreement is determined to be a contract, then an equity claim of unjust enrichment cannot coincide with a breach-of-contract claim and the proper sources of damages and their amount must be reevaluated.

334

{¶ 44} Cecil & Geiser's second and third assignments of error are overruled in part and sustained in part.

### Defendants' Assignments of Error

{¶ 45} We now turn to defendants' assignments of error. Defendants' first assignment of error asserts that the trial court erred in concluding that Plymale breached the licensing agreement by depriving Cecil & Geiser of the benefit of the bargain and violating the no-competition provision and, as a result, in awarding summary judgment in favor of Cecil & Geiser.

{¶ 46} Accordingly, summary judgment is appropriate only when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936. Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265.

{¶ 47} The trial court found that there is no genuine dispute of fact that Plymale's return to the practice of law in Ohio deprived Cecil & Geiser of the benefit of most of its bargain in the license agreement. The trial court also found that Plymale elected to return to practice in competition with Cecil & Geiser.

{¶ 48} It is clear from the evidence presented that Plymale violated the license agreement and deprived Cecil & Geiser of its use of the Plymale name. The question remains whether the license agreement is a valid contract.

{¶ 49} We are in agreement with the trial court that Plymale's actions were a violation of the license agreement. Whether these actions caused unjust enrichment or a breach of contract and possibly tortious interference with a contract remains a question that is still to be answered.

{¶ 50} Defendants' first assignment of error is overruled.

{¶ 51} Defendants' second assignment of error asserts that the trial court erred in considering parol evidence to modify the trigger of the license agreement when the obligations of the license agreement are required from "withdrawal from the firm" to "retirement."

{¶ 52} The trial court did not base its July 22, 2010 summary-judgment decision and subsequent trial court decision on a breach-of-contract claim but rather on equitable claims of promissory estoppel, quantum meruit, or unjust enrichment. The parol-evidence rule is not applicable to these claims in equity.

{¶ 53} However this court is in agreement with the trial court that the license agreement was drafted as an agreement conferring benefits upon retirement and that Plymale did, in fact, retire from law when he left the firm in 2003.

{¶ 54} Defendants' second assignment of error is overruled.

{¶ 55} Defendants' third assignment of error asserts that if Cecil & Geiser did lose the right to use the name "The Plymale Partnership" upon Plymale's return to practice, then the trial court erred in its sua sponte dismissal of defendants' counterclaims.

{¶ 56} The trial court ruled that Cecil & Geiser was obligated to cease use of the Plymale trade name. We, therefore, examine defendants' counterclaims.

{¶ 57} In count one, defendants claim that Cecil & Geiser continues to market its firm using the licensed name "Plymale" and request both damages and injunctive relief for violation of the license agreement. The relief that defendants seek is impractical. First, defendants cite advertising sources like the Yellowbook and AT & T Yellow Pages to show that Cecil & Geiser still uses the Plymale name. The trial court found that changes to such advertisements require a long lead time. Further, Cecil & Geiser stopped actively using the Plymale name by June 2010 and Cecil & Geiser did not unreasonably delay in ceasing the use of the Plymale trade name. Second, if Cecil & Geiser continues to advertise the Plymale name, it would be advertising, at least in some part, for a competitor.

{¶ 58} The damages that defendants seek for count one were already considered. The trial court ruled, and this court agrees, that any harm from confusion caused by both Cecil & Geiser and defendants' marketing the Plymale name flowed both ways, and that such harm is not quantifiable. It was proper for the trial court to dismiss count one of defendants' counterclaims.

{¶ 59} Count two argues that the license agreement is void, entitling Plymale to rescission and injunctive relief. Injunctive relief is both impractical and unnecessary as Cecil & Geiser stopped actively using the Plymale name. Count two was properly dismissed by the trial court.

{¶ 60} Count three of defendants' counterclaims argues that Cecil & Geiser engaged in tortious interference with the contract between Plymale and Shawn Dingus. This argument is not well taken. The trial court determined that Cecil & Geiser stopped using the Plymale name relatively quickly and that any harm caused by both firms using the Plymale name is not quantifiable. Further, it was Plymale's action that caused this controversy. The trial court properly dismissed defendants' third counterclaim.

{¶ 61} Defendants' third assignment of error is overruled.

{¶ 62} The court having sustained Cecil & Geiser's first assignment of error and overruled in part and sustained in part Cecil & Geiser's second and third assignments of error, and having overruled defendants' three assignments of error, the judgment of the Franklin County Court of Common Pleas is reversed in part and affirmed in part. The case is remanded on claims of breach of contract and tortious interference with contract for trial on the merits.

Judgment affirmed in part<br>and reversed in part,<br>and cause remanded.

CONNOR, J., concurs.

SADLER, J., concurs in part and dissents in part.

SADLER, Judge, concurring in part and dissenting in part.

{¶ 63} I respectfully concur with the majority opinion in part, but dissent in part, in this consolidated appeal.

{¶ 64} I agree with the majority's analysis in its disposition of Cecil & Geiser's three assignments of error in case No. 11AP–187 and agree that its first assignment of error should be sustained. However, I do not agree that the second and third assignments of error can be sustained in part given our analysis of the issues presented. Additionally, I write separately to emphasize that whether the damages as determined by the trial court on the theory of unjust enrichment will be ultimately awarded to Cecil & Geiser is dependent on the resolution of the contract claims for which this matter is being remanded. See, e.g., *Bickham v. Standley*, 183 Ohio App.3d 422, 2009-Ohio-3530, 917 N.E.2d 330 (doctrine of unjust enrichment is inapplicable when an express contract applies). Therefore, I would overrule Cecil & Geiser's second and third assignments of error in their entirety.

{¶ 65} With regard to Plymale's appeal in case No. 11AP–167, I agree that his second assignment of error should be overruled because I agree that under the facts of this case, the trial court did not err in considering parol evidence when adjudicating Cecil & Geiser's claims in equity. However, I dissent from the resolution of Plymale's first and third assignments of error. We have sustained Cecil & Geiser's first assignment of error, which challenged the trial court's sua sponte dismissal without requisite notice of Cecil & Geiser's claims for breach of contract and tortious interference with contract. In my view, Plymale's first and third assignments of error challenging the trial court's sua sponte dismissal of his counterclaims for breach of contract and tortious interference with contract

should be sustained for the same reason and remanded to the trial court for resolution.

{¶ 66} Accordingly, I respectfully concur in part and dissent in part.